**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF TEXAS**

**MARSHALL DIVISION**

| | | |
|---|---|---|
| **STANLEY BEATY, SELMA BELL, THERESA RICKS, STEPHANIE ROSE, ERICA WILLIAMS, THE ESTATE OF DENNIS MALONE on behalf of themselves and all those similarly situated,** | § § § § § § § | |
| *Plaintiffs*, | § § | Civil Action No.  2:14-CV-58 |
| v. | § § | JURY TRIAL DEMANDED |
| **THE HILLSHIRE BRANDS COMPANY, BIMBO BAKERIES USA, INC., JOHN and JANE DOES 1-10, inclusive,** | § § § § § | |
| *Defendants*. | § § § § | |

**ORIGINAL COMPLAINT**

1.      Plaintiffs Stanley Beaty, Selma Bell, Theresa Ricks, Stephanie Rose, Erica Williams, the Estate of Dennis Malone,  (collectively "Plaintiffs") on behalf of themselves and all others similarly situated, by and through their attorneys, bring this action for damages and other legal and equitable relief from the violation of the laws proscribing discrimination based on race, color, and retaliation, as well as associational race discrimination, stating the following as Plaintiffs' claims and class claims against The Hillshire Brands Company, Bimbo Bakeries USA, Inc. and John and Jane Does 1-10 (collectively "Defendants").

## INTRODUCTION

2.      This is an action brought by Plaintiffs seeking damages from Defendants for acts of intentional discrimination based on race and color as well as for acts of retaliation, because Plaintiffs engaged in protected activity.  Defendants' acts of discrimination and retaliation are in violation of the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1981 *et seq*.; and the 1991 Civil Rights Act, as amended, 42 U.S.C. § 1981a *et seq*.;

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and (iii) 42 U.S.C. § 1981 *et seq*., as amended and 42 U.S.C. § 1981a *et seq*., as amended.

4.      Venue is also proper in this Court pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

5.      Defendants, previously known as Sara Lee Corporation, owned and operated a plant in Paris, Texas ("Sara Lee plant") that produced goods under the Sara Lee brand.  The Sara Lee plant employed hundreds of workers in a toxic, asbestos-laden environment.  The overwhelming majority of the employees subjected to these unhealthy conditions were Black.  Several of these employees suffered varying degrees of illness including, but not limited to, extensive respiratory problems, cancer, and, in some cases, death, as a direct result of being exposed to asbestos, mold and/or other toxic substances throughout their employment at the Sara Lee.

6.      In November of 2011, Sara Lee Corporation sold its North American fresh bakery business to Grupo Bimbo, a Mexican corporation.  Bimbo Bakeries USA, Inc., a Pennsylvania corporation and wholly-owned subsidiary of Grupo Bimbo, took over control of approximately 13,000 former Sara Lee employees and forty-one former Sara Lee plants in the United States.

7.      In June of 2012, the remaining parts of Sara Lee Corporation split into two companies, Hillshire Brands Company, based in Chicago, and D.E. Master Blenders 1753, a European-based company.

## PARTIES

8.      Defendant, The Hillshire Brands Company ("Hillshire"), formerly known as Sara Lee Corporation, is a publicly traded Maryland corporation with its principal place of business located at 400 S Jefferson Street, Chicago, Illinois 60607-3812, and employed individuals in Paris, Texas up until November of 2011 and employs individuals throughout the country.  Upon information and belief, Hillshire has approximately 9,000 employees and annual sales of $3.9 billion.  Hillshire may be served with process by serving its registered agent CT Corporation System at 208 SO LaSalle Street, Suite 814, Chicago, Illinois 60604.

9.      Defendant Bimbo Bakeries USA, Inc. ("Bimbo Bakeries"), a Delaware corporation, and subsidiary of Mexican-based company Grupo Bimbo, acquired the former Sara Lee Corporation's North American fresh bakery business in November of 2011.  Bimbo Bakeries operates more than 65 bakeries, employs more than 25,000 associates, and distributes products throughout the United States. Its principal place of business is located at 255 Business Center Drive, Horsham, Pennsylvania 19044.  Bimbo Bakeries may be served with process by serving its registered agent Capitol Services, Inc., 1675 S State St. Ste B, Dover, DE 19901.

10.     Plaintiffs are unaware of the true names, capacities, relationships, and extent of participation in the conduct alleged herein of the Defendants sued as John and Jane Does 1- 10, inclusive, but are informed and believe that said Defendants are legally responsible for the conduct alleged herein and therefore sue these Defendants by such fictitious names.  Plaintiffs will amend this Complaint to allege both the true names and capacities of the Doe Defendants when ascertained.

11.     Plaintiff Stanley Beaty is a person who has been aggrieved by Defendant's actions.  He is and has been, at all relevant times, an African-American male citizen of the United States of America and is a resident of the State of Texas.

12.     Plaintiff Selma Bell is a person who has been aggrieved by Defendant's actions.  She is and has been, at all relevant times, an African-American female citizen of the United States of America and is a resident of the State of Texas.

13.     Plaintiff Theresa Ricks is a person who has been aggrieved by Defendant's actions.  She is and has been, at all relevant times, an African-American female citizen of the United States of America and is a resident of the State of Texas.

14.     Plaintiff Stephanie Rose is a person who has been aggrieved by Defendant's actions.  She is and has been, at all relevant times, an African-American female citizen of the United States of America and is a resident of the State of Oklahoma.

15.     Plaintiff Erica Williams is a person who has been aggrieved by Defendant's actions.  She is and has been, at all relevant times, an African-American female citizen of the United States of America and is a resident of the State of Texas.

16.     The Estate of Dennis Malone represents the now deceased Dennis Malone who was a person aggrieved by Defendant's actions.  He was at all relevant times, a Caucasian male citizen of the United States of America and was a resident of the State of Texas during his employment and at the time of death.

## FACTS UNDERLYING CLASS CLAIMS

17.     From on or about 2001 until 2006, there were approximately two-hundred employees per shift, who worked on four production/wrapping Lines at Defendants' Paris, Texas plant.  Out of those employees, at least 70 to 75% were Black.  From about 2006 to 2010, the Lines were cut back from four to two.  After layoffs, 80% of the remaining employees were Black.  From 2010 to 2011, the two remaining Lines were cut back to one and approximately 73% of the remaining employees were Black.

18.     Black employees were intentionally placed in areas of the plant where they were unwillingly exposed to known hazardous working conditions including asbestos, black mold, and other toxic chemicals, while the majority of the White employees who worked at the Sara Lee plant were in office positions or other areas of the plant where their exposure to such toxins was minimal.  The exposure to these hazardous working conditions affected a term, condition or privilege of employment for Black employees in that the exposure was not only severe but also pervasive when viewing the totality of the circumstances.

19.     A great number of these employees were forced to continue working without the proper health and safety equipment during the removal of toxic substances, including asbestos. Management did not warn these employees about potential dangers, and when employees asked why workers were coming in wearing protective suits, they were told it was nothing and forced them to continue working in unsafe conditions.

20.     Defendants discriminated against Black employees by intentionally forcing them to work in hazardous working conditions resulting in exposure to asbestos, black mold and other toxic substances in violation of 42 U.S.C. § 1981.

21.     After employees complained about the hostile work environment and participated in safety meetings where they asked about the illnesses, it resulted in retaliation in the form of layoffs and continued poor treatment ultimately leading to the shut down of the Sara Lee plant entirely in November of 2011.

## CLASS ACTION ALLEGATIONS

22.     Plaintiffs Stanley Beaty, Selma Bell, Theresa Ricks, Stephanie Rose, and Erica Williams ("Rule 23 Class Representatives") bring this class action pursuant to FED. R. CIV. P. 23(a) and (b)(3) on behalf of a class of Black former employees who were employed by Defendant at the Sara Lee plant in Paris, Texas through February 2010.

23.     The Rule 23 Class Representatives are members of the Class they seek to represent.

24.     The Rule 23 Class Representatives define the Class as follows:

> All Black employees of Defendant who were employed by Defendant's Sara Lee plant in Paris, Texas through February 2010, and who were unwillingly subjected to a hostile work environment including toxic and/or unsafe working conditions because of their membership in a protected class, which affected a term, condition or privilege of employment.

25.     The number of class members who have suffered under Defendants' discriminatory animus are too numerous to join in a single action, necessitating class recognition.   Upon information and belief, Defendants employed scores of Black employees at their Sara Lee plant in Paris, Texas.

26.     There are questions of law and fact common to the Class, and these questions predominate over any questions that may affect only individual class members.   Common questions relating to Defendants' violation of 42 U.S.C. § 1981 *et seq*., as amended and 42 U.S.C. § 1981a *et seq*., as amended, include but are not limited to: (a) whether the Rule 23 Class are Black and therefore members of a protected class; (b) whether the Rule 23 Class were unwillingly subjected to a systemic hostile work environment in that they were exposed to a toxic and unsafe work environment; (c) whether the Rule 23 Class was subjected to harassment because of their membership in a protected class; and (d) whether the harassment affected a term, condition or privilege of employment for members of the Rule 23 Class.

27.     The Rule 23 Class Representatives' claims are typical of the claims of the Class. Specifically, they have all been subjected to the same hostile work environment; their claims are based upon allegations that the hostile work environment affected a term, condition or privilege of employment; their claims all rest on common evidence and are all based on common legal theories.

28.     The Rule 23 Class Representatives are able to and will fairly and adequately represent and properly protect the interests of the class and all class members because: (1) they are willing and able to represent the proposed class and have every incentive to pursue this action to a successful conclusion; (2) their interests are not antagonistic to those of the other class members; and they are represented by counsel experienced in litigating major class actions in the field of discrimination.

29.     Class certification is also appropriate pursuant to FED. R. CIV. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the

fair and efficient adjudication of this litigation.  The class members have been damaged and are entitled to recovery as a result of Defendants' systemic hostile work environment toward Black employees and requiring each class member to pursue his or her claim individually would result in needless duplication of proof and would waste the resources of both the parties and the judiciary.

## ADDITIONAL ALLEGATIONS OF THE RULE 23 CLASS REPRESENTATIVES

### Stanley Beaty

30.     Stanley Beaty, a Black male, was employed by Defendants at the Sara Lee plant beginning on April 11, 2000.  He worked on the Cake Line, Croissant Line and in the Sanitation Department until February 12, 2010 when he was laid off.

31.     When Beaty was in sanitation, he and other similarly situated Black employees were subjected to discriminatory work assignments.  Beaty and his Black co-workers were given more demanding and less desirable jobs. For example, they had to clean the tops of the ovens, which were extremely hot. Assignments were supposed to be given on a rotating basis, but this was never done.

32.     Beaty complained about the work conditions in which he and his Black co-workers were made to work, i.e., working in hot areas of the plant without fans or adequate ventilation. Nothing was ever done to address his complaints.  Beaty stopped complaining because he feared losing his job, and that management would easily find another black employee to replace him.

33.     Beaty was required to clean the ovens on three consecutive occasions from 2001 to 2003. The ovens were cleaned annually.  It was an uncomfortable and degrading job.  While the oven itself is 8 feet tall, 5 feet wide and 30 feet long, the space where the cleaner must go is the width of a human body. It was an extremely tight fit for Beaty.

34.     Beaty complained to his supervisor, Ricki Wolf (White) about why he was required to clean the oven three consecutive years as opposed to someone else. Wolf told him that he was the smallest guy and that he was the low man on the totem pole.  However, there were smaller White employees, such as Brent McFatridge, in the sanitation department who did not have seniority over Beaty.

35.     After his complaints, around 2003, Wolf began harassing Beaty more.  Beaty complained to Human Resources.  Human Resources said they would talk to Wolf, however Beaty did not see any changes in his behavior and Beaty no longer complained because he feared that he would lose his job.

36.     Throughout his employment, and up until about 2007, the men's bathroom had racist comments and slurs on the walls. Management would have people paint over the writing but more graffiti would be added afterwards.

37.     The lead man, Earl Butler (White), would sit very close to Beaty and watch him.  Butler did not treat White employees this way.  Butler also followed Black workers into the bathroom to check on them.  He never subjected White employees to such degrading behavior.

38.     Beaty was asked to clean the ceilings as part of his job duties.  Black workers were always assigned to clean the ceilings.  Beaty later learned from his Black co-worker, Vernon Milton, that the ceiling contained asbestos.  Beaty and his Black co-workers disturbed the asbestos when they cleaned the ceilings, and Beaty experienced physical symptoms including dizziness during this work.

39.     Management had regular safety meetings, but when Black employees asked about why everyone was getting sick, management for Defendants said they would look into it but provided no other response, information, or warning.

40.     In January 2010, Beaty saw a small sticker near the Cake Line that said "Caution: Asbestos within the plant."    Beaty had not seen this sticker prior to that time.

### Selma Bell

41.     Selma Bell ("Bell"), a Black female, was employed by Defendants at the Sara Lee Paris, Texas facility from August 2000 to February 2010.   Throughout her employment there, she worked on the Donut, Frozen Dough, and Cake Lines.

42.     Bell and her similarly situated Black co-workers were subjected to disparate treatment as compared to their White co-workers.   White employees were allowed to leave work early without receiving any write-ups or disciplinary action; Black employees were not.

43.     Throughout her employment, Bell complained to management about migraines as well as respiratory issues, which continued to worsen as the exposure to the toxins continued.   Bell was diagnosed with pneumonia numerous times, the most severe occurring between six to seven months prior to the end of her employment.   Bell developed pneumonia in both lungs, and then bronchitis.   Bell's doctor believed that a possible cause for her routine respiratory illnesses and issues were due to the work conditions in the Sara Lee facility.

44.     Bell also consulted a neurologist for her migraines.   An MRI revealed a spot on her brain, but Bell has been unable to receive continued treatment due to the cost of doing so.   Upon information and belief, the health problems that Bell developed are related to working in sections of the Sara Lee plant where she and other similarly situated Black employees were assigned.

45.     Bell was employed at the Sara Lee facility during an asbestos removal process.   During the removal stage, no extra safety measures were taken and at no time did management at Sara Lee inform employees of the asbestos removal.

46.     Bell only learned about the asbestos removal from other employees at the Sara Lee facility.  The area where the removal was taking place was blocked off, but fumes from the area spread throughout the plant.  Bell and her Black co-workers were not given any protective equipment during this time.

**Theresa Ricks**

47.     Theresa Ricks ("Ricks"), a Black female, was employed by Defendants at the Sara Lee Paris, Texas facility from August 30, 2004 until February 2010.  During her employment at Sara Lee, she worked on the Pan Line, Cake Line, Donut Line, Hearth Line, and Croissant Line.  In all of these sections of the plant, the employees were predominately Black, but the Supervisors were predominately White.

48.     Ricks was subjected to disparate treatment when she was written up by Kenneth Fox, a White supervisor.  Ricks had been placed in a position that was previously held by a White employee who had taken vacation.  Ricks was not trained to be in that position and was written up when she was unable to perform the duties of the job.  Upon information and belief, Ricks was written up so that she could be removed from the position so that another White employee could be placed in that position instead.

49.     While working at Sara Lee, Ricks experienced nausea and had to undergo a partial hysterectomy.  Upon information and belief, Ricks experienced these health issues because of asbestos and/or black mold in the plant and dangerous work conditions at the Sara Lee facility.  Additionally, several Black employees who worked on the Cake Line with Ricks were all diagnosed with cancer.

50.     When Ricks had her hysterectomy, she needed to take off from work. While Ricks was in the hospital, she received phone calls informing her that if she did not return to work she would receive points.  At that time, if she had received more points, she would have been terminated. When Ricks returned to work, Kenneth Fox (White) called her into his office to inform her that she had been given the maximum number of points and he tried to fire her on the spot.  Ricks went to her union representative to have the points removed as she was out on FMLA leave.

51.     Ricks was able to return to work on light duty status; however, an employee in Human Resources told her that she could not come back because they did not have any position that she could work in while sitting down.  White employees who requested accommodations such as light duty were allowed to work in the office, where they could sit down, but Black employees, including Ricks, were not.  While she was ultimately permitted to come back to work, she was still not given a position where she could sit down.

52.     Throughout her employment at the Sara Lee facility, there were no meetings to discuss the illnesses in the plant. Rick's Black co-workers raised their concerns of asbestos being in the plant and the illnesses that were occurring, but Sara Lee management avoided addressing those concerns and provided no other response, information, or warning.

**Stephanie Rose**

53.     Stephanie Rose ("Rose"), a Black female, was employed by Defendants at the Sara Lee Paris, Texas facility from July 23, 2004 until February 6, 2010.  Rose worked on the Cake Line, Pan Line, and in Sanitation.

54.     Black workers made up the majority of the Cake Line, Pan Line, and Sanitation while Rose was at the Sara Lee plant.

55.     While employed at the Sara Lee plant, Rose's kidney levels dropped drastically, leading to her having to be on dialysis.

56.     Rose observed that several of her co-workers were getting sick as well.   Despite questions from several of Rose's co-workers about the presence of asbestos in the plant, management denied the presence of asbestos, and toward the end of 2009 or beginning of 2010, management started putting signs up near the Cake Line and break room that said those places were "asbestos free."   Upon information and belief, such signs were intentionally placed to mislead employees.

57.     When she first began working in Sanitation in 2008 or 2009, she was assigned by Todd (White) to clean the tops of the ovens by herself.   Rose later learned that this particular task required two people, and by placing her alone she was intentionally placed in an unsafe assignment.   Rose also observed mold in the Cake Line area of the plant when she was in Sanitation.

58.     Rose and her similarly situated Black employees were not given any protective equipment other than latex gloves.   They were also supposed to receive aprons but these were never provided.   While working in sanitation, Rose and her similarly situated Black co-workers were supposed to be given heavy-duty gloves for handling chemicals, but such gloves were not provided.

### Erica Williams

59.     Erica Williams ("Williams"), was employed by Defendants at the Sara Lee plant from June 2000 until February of 2010.

60.     Williams worked on the Crustless Line for three years as a machine operator and racker when she first started in the facility.  After that, she worked on the Cake Line as a mixer in the production area and in wrapping for approximately six years.  She also worked on the Croissant Line for approximately two years.

61.     Williams became ill from working in the Sara Lee facility.  She developed a severe and constant cough that she suffered from throughout her employment.  In January of 2009, Williams developed a lump in her breast.

62.     Around the same time in 2009, many of her Black co-workers were becoming ill with cancer.  At this time, employees at the Sara Lee plant began to suspect that the facility was contaminated with asbestos, black mold and other toxins.

63.     Upon information and belief, Sara Lee management never held any meetings with employees regarding the illnesses occurring as a result of the work environment or the dangers of being exposed to dangerous toxins.  While, Sara Lee management conducted safety meetings, the substance of the meetings was about the machines they worked on and what they should and should not do to be safe in the plant.  Despite Williams' co-workers raising their concerns of asbestos being in the plant and the illnesses that were occurring, Sara Lee management avoided addressing those concerns and provided no other response, information, or warning.

64.     The roof leaked often, and as a result Sara Lee hung tarps throughout the facility to "protect" employees and the food products.  However, it was impossible to prevent dirty water and debris from falling onto Williams, her Black co-workers, and onto the machines and the food.  Most of the time, however, management required the employees to keep working and asked that they do their best to remove any debris in the food, if they saw it.

65.     The facility was also very damp.  Williams saw mold throughout the facility.  The piping, the air conditioning units, and other equipment contained mold.  Before audits, Williams and her Black co-workers were required to cover it up and clean it.  Otherwise, the painters painted over it so it was not easily visible.

66.     Williams and her similarly situated Black co-workers were forced to do more difficult and physically taxing jobs than their White co-workers.  Williams regularly had to carry heavy objects such as frozen carrot cakes.  In or around 2008, Williams asked Tony Lane (White) for help in carrying a heavy cake to a nearby machine, but she was told to find a way to get it done herself.  In contrast, Keith Chainey, a White male mixer, was always given help when he was required to carry the frozen cakes.

67.     Black employees were disciplined differently than their White co-workers by managers and leadmen.  If a Black employee made any minor mistake, it was scrutinized and brought to their attention.  For example, but not by way of limitation, Williams was written up by Kenneth Fox (White) because some of the dough she prepared did not have enough sugar in it due to malfunctioning valves. Williams learned that Keith Chainey (White) did the same thing and was not written up.

### THE ESTATE OF DENNIS MALONE

68.     Dennis Malone, ("Malone") began working at the Sara Lee plant in Paris, Texas on May 12, 1996 and remained employed there until he passed away on August 23, 2010. He was employed in the Engineering Department as an Electronic Control Technician and worked in every area of the Sara Lee facility during his employment.

69.    Malone observed that the working conditions in the plant were poor.  The Cake Line contained large amounts of asbestos and other dangerous toxins, and management at the Sara Lee plant did not care about the workers on the Cake Line, who were predominantly Black. There were no efforts to improve the Line or protect the workers from exposure to harmful substances.

70.    The Cake Line was regularly staffed almost exclusively by Black workers. Malone complained to Sara Lee management about the conditions on the Cake Line. The presence of asbestos on the Cake Line was constantly talked about among the employees. Management did nothing to warn the employees, continuously refused to acknowledge the presence of asbestos, and insisted there was nothing to worry about.

71.    The Sara Lee facility was segregated by race.  The Pan Line was almost entirely composed of Black workers. The Pan Line was always extremely hot as the oven was not shielded off.  Black Workers on this Line were forced to work in this heat for the entirety of their shifts without relief.

72.    The Hearth Line was quite similar to and was located in the same area as the Pan Line. When the Hearth Line was run, it too was run almost entirely by Black workers and was extremely hot as well.

73.    Malone observed that Black workers were given the undesirable positions and treated poorly as compared to their White co-workers.

74.    Malone's job as an Electronic Control Technician was to work in his office on a computer from which he would write the computer programs that ran the Lines.  However, after he complained of the conditions on the Cake Line and other parts of the facility predominately staffed by Black workers, Malone's workload became overwhelming and consisted primarily of

work outside of his normal duties. Malone began getting an overwhelming amount of work, and was called in to work at least two to three times per week when he was not scheduled to work.

75.     For example, Malone's duties did not include fixing ovens and other broken equipment on the Lines.  However, after complaining on behalf of the Black employees, Malone was constantly called to fix problems with the ovens and on the Lines. Because of the poor condition of the Cake Line, Malone was constantly forced to fix problems on the Cake Line where he, along with the Cake Line workers, were exposed to asbestos and/or other toxins.

76.     Upon information and belief, Malone was required to perform duties outside of his normal duties and was subjected to dangerous working conditions in retaliation for his complaints about the working conditions for Black employees in violation of 42 U.S.C. § 1981, as amended, and in violation of Malone's First Amendment rights under § 1981.

77.     Malone was also constantly exposed to asbestos or an asbestos like poison, black mold and/or other toxins and other materials inside the ovens when he had to fix them. In one particular oven, Malone noticed that the insulation inside the oven was broken and this resulted in pink glittery flakes falling onto the products while they were in the oven.

78.     After some research, Malone quickly learned this material was dangerous and alerted Sara Lee.  Malone then consulted the man who designed the ovens, Rabi Venkateswar, who told Malone that the oven was made by an Italian company, Sassib, and that the material falling onto the product was "worse than asbestos." Malone had already been exposed to the dangerous material for more than three hours while he worked in the oven.

79.     This particular oven ran in that condition for at least six months before Sara Lee management did anything to fix it. On a daily basis thousands of food products and a large number of Black employees were exposed to the dangerous material. The exposed products were sent to be sold to consumers who would likely eat the contaminated products.

## CAUSES OF ACTION

### Count I

**EMPLOYMENT DISCRIMINATION ON THE BASIS OF RACE**
*Systemic Hostile Work Environment*
42 U.S.C. § 1981 *et seq.*, as amended and 42 U.S.C. § 1981a *et seq.*, as amended
(On Behalf of Plaintiffs and the Class, other than The Estate of Dennis Malone)

80.     Each Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

81.     The conduct alleged herein violates Section 1981 of the United States Code as the Defendants have engaged in the practice of discrimination and retaliation against the Plaintiffs named herein and the Class of similarly situated individuals who have asserted such claims.

82.     Plaintiffs' requests for relief are set forth below.

### Count II

**EMPLOYMENT DISCRIMINATION ON THE BASIS OF RACE BY ASSOCIATION**
*Systemic Hostile Work Environment*
42 U.S.C. § 1981 *et seq.*, as amended and 42 U.S.C. § 1981a *et seq.*, as amended
(On Behalf of The Estate of Dennis Malone)

83.     The Estate of Dennis Malone repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

84.     The conduct alleged herein violates Section 1981 of the United States Code as the Defendants have engaged in the practice of discrimination and retaliation against the Plaintiff named herein who has asserted said claims.

85.    The Estate of Dennis Malone's requests for relief are set forth below.

## Count III

### EMPLOYMENT DISCRIMINATION – RETALIATION
*Retaliation*
42 U.S.C. § 1981 *et seq*., as amended and 42 U.S.C. § 1981a *et seq*., as amended
(On Behalf of All Plaintiffs and the Class)

86.    Plaintiffs incorporate by reference the allegations set forth throughout this Complaint.

87.    Plaintiffs complained to management at the Sara Lee plant about the unsafe working conditions to which Black employees were subjected, and as such engaged in protected activity under 42 U.S.C. § 1981 et seq., as amended and 42 U.S.C. § 1981a et seq., as amended.

88.    Defendant retaliated against Plaintiffs.

89.    Plaintiffs request for relief are set forth below.

## Count IV

### FIRST AMENDMENT – RETALIATION
*Retaliation*
42 U.S.C. § 1981 *et seq*., as amended and 42 U.S.C. § 1981a *et seq*., as amended
(On Behalf of All Plaintiffs and the Class)

90.    Plaintiffs incorporate by reference the allegations set forth throughout this Complaint.

91.    Plaintiffs complained to management at the Sara Lee plant about the unsafe working conditions to which Black employees were subjected, and as such engaged in protected activity under the First Amendment and 42 U.S.C. § 1981 et seq., as amended and 42 U.S.C. § 1981a et seq., as amended.

92.    Plaintiffs' requests for relief are set forth below.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Rule 23 Class, pray for the following relief:

- That this case be maintained and certified as a Class Action on behalf of the proposed class, that the Rule 23 Representatives be designated as representatives of the class, and that their counsel of record be designated as Class Counsel;

- That the practices of the Defendant complained of herein be determined and adjudged to be in violation of the rights of the Plaintiffs and members of the Class under 42 U.S.C. § 1981 et seq., as amended and 42 U.S.C. § 1981a et seq., as amended, and of the rights of Plaintiffs under the state and local laws identified above prohibiting discrimination and retaliation in employment;

- That judgment be entered in favor of Plaintiffs and the members of the Class set forth herein, and against Defendant, for back pay (including interest or an appropriate inflation factor), front pay, benefits and all other amounts owed to Plaintiffs and the members of the Class;

- That the Plaintiffs and the members of the Class be awarded compensatory damages for their hostile environment claims;

- That the Plaintiffs and the members of the Class be awarded punitive damages;

- That the Plaintiffs and the members of the Class be awarded pre and post judgment interest;

- That the Court award Plaintiffs and the members of the Class reasonable attorneys' fees and costs associated with this matter, including but not limited to expert fees' and costs;

- That the Court retain jurisdiction over Defendant until such time as it is satisfied that it has remedied the practices complained of and is determined to be in full compliance with the law; and

- That the Plaintiffs and the members of the Class be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

Respectfully submitted,

Eric M. Albritton
Texas State Bar No. 00790215
ema@emafirm.com
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, Texas 75606
Telephone: (903) 757-8449
Facsimile: (903) 758-7397

Jay D. Ellwanger
Texas State Bar No. 24036522
jellwanger@dpelaw.com
Stefanie T. Scott
Texas State Bar No.24061617
sscott@dpelaw.com
**DiNovo Price Ellwanger& Hardy LLP**
7000 North MoPac Expressway, Suite 350
Austin, Texas  78731
Telephone: (512) 539-2626
Facsimile: (512) 539-2627

Sara Wyn Kane
N.Y. State Bar No. 2935617
skane@vkvlawyers.com
Deborah L. Rubin
N.Y. State Bar No. 4840872
Drubin@vkvlawyers.com
James A. Vagnini
N.Y. State Bar No. 2958130
jvagnini@vkvlawyers.com
Robert J. Valli, Jr.
N.Y. State Bar No. 2383107
rvalli@vkvlawyers.com

**Valli Kane &Vagnini, LLP**
600 Old Country Road, Suite 519
Garden City, New York 11530
Telephone: (516) 203-7180
Facsimile: (516) 706-0248

***Counsel for Plaintiffs***